IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT )<br>OF J.A.R. BARGE LINES, L.P., AS )<br>OWNER, AND MON RIVER TOWING, INC., )<br>AS OWNER *PRO HAC VICE*, OF THE )<br>M/V ROSE G., FOR EXONERATION FROM )<br>AND/OR LIMITATION OF LIABILITY ) | Civil Action No. 03-163 |

**MEMORANDUM ORDER**

Pending before the Court is a Motion by J.A.R. Barge Lines, L.P., Mon River Towing, Inc., and the *M/V Rose G.* (collectively, "JAR" or "the JAR parties"), for Judgment on the Pleadings as to the Claim of Ingram Barge Company ("Ingram.") (Docket No. 53, "Motion.") For the reasons set forth below, the Motion is denied without prejudice.

I.   **INTRODUCTION**

The facts of this case are well known to the parties and irrelevant to the reasoning herein. In its Motion, JAR seeks to be dismissed entirely from this case, arguing that inasmuch as the JAR parties have settled with Mark Allen Smith as to his claims against them in this or any other suit arising out of Mr. Smith's accident on January 21, 2003, they are entitled to "be relieved of the financial and time burdens of remaining in this litigation in any capacity." (Brief in Support of Motion. . . for Judgment on the Pleadings, Docket No. 54, "JAR Brief," at 10.)

1

## II.  STANDARD OF REVIEW; JURISDICTION

The Motion has been filed pursuant to Fed.R.Civ.P. 12(c),[1] which may be analyzed as either a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment.  See Fed.R.Civ.P. 12(c): "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Although the parties disagree on the standard to be used in reviewing this Motion and have attached various documents to their pleadings, the Court finds no reason to rely on them and will analyze the Motion as if it were a motion to dismiss.

Under Rule 12(b)(6), the court allows "the non-movant the benefit of all reasonable inferences drawn from the allegations contained in the complaint and . . . accept[s] these allegations as true. . . . However, we are not required to accept legal conclusions alleged or inferred in the complaint."  Breyer v. Meissner, 214 F.3d 416, 421 (3d Cir. 2000) (internal citations omitted.)  "A complaint will withstand an attack under . . . [Rule] 12(b)(6) if the material facts as alleged, in addition to

---

[1] Inasmuch as this Court has jurisdiction to hear cases brought in admiralty and maritime law, Rules A(4) and 8(F) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure are applicable.  Under Rule A(4), "the general Rules of Civil Procedure . . . are . . . applicable to [admiralty] proceedings except to the extent that they are inconsistent with these Supplemental Rules."

2

inferences drawn from those allegations, provide a basis for recovery." Emerson v. Thiel College, 296 F.3d 184, 188 (3d Cir. 2002). In considering a motion to dismiss, the court does not "inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

There is no dispute between the parties as to the propriety of this Court's exercise of its admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1).

### III. ANALYSIS

The Court has two reasons to deny the JAR Motion at this point in the litigation, the first having to do the Court's prerogative to manage its cases, the second based on Ingram's legal arguments.

At the hearing on April 2, 2004, at which we entertained argument concerning the settlement agreement between Mr. Smith and the JAR parties, the Court stated that it would approve the settlement agreement, "without prejudicing in any way the right of Ingram Barge to assert any claim it may have against Mon River Towing or the other parties to this action." (Transcript of Settlement Proceedings on April 2, 2004, Docket No. 32, "April 2, 2004 Tr.," at 35.) Counsel for the JAR parties subsequently announced to the Court that following the deposition of Mr. Smith, they intended to file a motion in which they would

>     ask that under the McDermott [versus] AmClyde[2] and Boca
>     Grande decisions decided by the U.S. Supreme Court,
>     since Mon River Towing and J.A.R. Barge Lines have
>     settled for their proportionate share of liability for
>     this incident, that they are done and . . . there
>     cannot be a claim for contribution or indemnity against
>     them if they are a settling party, even if Mr. Smith
>     goes after Ingram.

(April 2, 2004 Tr. at 36.)

The Court responded:

>     I'm not going to agree to that.  I'm not going to do
>     anything until we find out what recovery, if any Mr.
>     Smith makes against Ingram, and then we'll deal with
>     it.  So you might as well not file that motion until
>     the matter is resolved.  I'll deny it until we can get
>     to the final resolution of this matter.

Id.

We fail to see how this directive could have been more explicit, but JAR has filed just such a motion. While there is

---

[2] See McDermott, Inc. v. AmClyde, 511 U.S. 202 (1994). In McDermott, the Supreme Court considered the appropriate allocation of liability among multiple defendants under maritime law after a plaintiff had entered a settlement that did not encompass all the defendants. The Court adopted a "proportionate share" rule, whereby a plaintiff's judgment against a non-settling defendant is reduced by the settling defendants' proportionate share of responsibility for the total judgment. Id. at 207-209. The Court explained that, "In such cases, the plaintiff's recovery against the settling defendant has been limited not by outside forces, but by its own agreement to settle. There is no reason to allocate any shortfall to the other defendants, who were not parties to the settlement. Just as the other defendants are not entitled to a reduction in liability when the plaintiff negotiates a generous settlement, so they are not required to shoulder disproportionate liability when the plaintiff negotiates a meager one." McDermott, 511 U.S. at 221-222. Under this approach, it follows that "no suits for contribution from the settling defendants are permitted, nor are they necessary, because the non-settling defendants pay no more than their share of the judgment." Id. at 209. The same day McDermott was handed down, the Court remanded Boca Grande Club, Inc. v. Florida Power & Light Co., 511 U.S. 222, 223 (1994), for reconsideration in light of its decision in McDermott.

still any viable legal basis on which to allocate liability among Mr. Smith, the JAR parties, Ingram, and/or the Tri-River parties, and while discovery is incomplete, the Court concludes that retaining all the parties will expedite settlement or trial. Although we recognize, as JAR points out, that the decision in <u>McDermott</u> promotes settlements and facilitates judicial economy (JAR Brief at 10), we also believe that by seeking "freedom from the threat of 'back-door claims' for contribution and/or indemnity," and relying on the remaining parties' ability to argue that the JAR parties were exclusively responsible for the injury to Mr. Smith, JAR may seek more freedom than that to which it is justifiably entitled at this stage of the litigation.

Moreover, pursuant to Orders entered only a few days ago (Docket Nos. 92 and 93), the Court granted in part a motion by JAR to enforce the indemnification clause (paragraph 11) of the settlement agreement, dismissing Mr. Smith's claims against the JAR parties and requiring Mr. Smith to defend, indemnify and hold harmless the "Releasees" (as defined therein) against claims brought by Ingram in Civil Action Nos. 03-163 and 03-180. We specifically ordered that such dismissal would "in no way, now or in the future, be construed to affect the claims and/or defenses of Ingram or J.A.R. or the defenses in Mr. Smith, in Civil Action Nos. 03-180, 04-753 and 04-1611." (Order of Court, Docket No. 93, ¶ 4.) Since it is not yet entirely clear what those claims

and/or defenses might be, dismissing JAR entirely from this case would be precipitous.

As to the second reason not to grant JAR's Motion at this time, the Court concludes that Ingram has alleged material facts that provide an alternative basis for recovery against JAR and it should be entitled to offer evidence to support its claims. That is, Ingram has alleged that there is a contractual agreement between itself and Mon River Towing, pursuant to which Ingram is entitled to "full protection, defense and indemnification" plus interest, costs, and attorney fees. (Ingram's Claim and Answer, Docket No. 11, ¶¶ 9-10.) If Ingram is able to show that such a contractual relationship exists, it may also pursue a claim of contractual indemnity under Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124 (1956), as it proposes in its response to JAR's Motion. (Response to Motion...for Judgment on the Pleadings, Docket No. 56, at 17-19.)

In Ryan, the shipping company, Pan-Atlantic, and Ryan, a stevedorer, agreed that Ryan would perform all loading and unloading operations for the shipper's boats used along the Atlantic seaboard. The two parties did not enter into a formal contract, but relied on a series of letters which did not contain an express indemnity agreement. Ryan, 350 U.S. at 125-126. Pursuant to that agreement, Ryan loaded a Pan-Atlantic boat with large rolls of pulpboard which should have been immobilized by

"chocking" the bottom tier of rolls with wedges and "nesting" upper tiers of rolls in the troughs between them.  It was the usual practice that Ryan's longshoremen stowed the cargo under the immediate direction of Ryan foremen, while cargo officers employed by Pan-Atlantic supervised the loading of the entire ship and had authority to reject unsafe stowage.  Id. at 126.

When the boat arrived in New York, one of Ryan's employees was severely injured when a 3200-pound roll of pulpboard broke loose and struck him.  The evidence showed that the longshoreman was not negligent and that the rolls had been insufficiently secured when they were loaded.  Ryan satisfied the maintenance and cure of the injured longshoreman, who then sued Pan-Atlantic, claiming that the unsafe stowage or the shipowner's negligence when the cargo was stowed created an unseaworthy condition of the ship. The longshoreman received a verdict in his favor for $75,000.  Ryan, 350 U.S. at 126-128.

The case eventually found its way to the Supreme Court where one of the questions was whether, in the absence of an express agreement of indemnity, a stevedoring contractor is obligated to reimburse a shipowner for damages caused by the contractor's improper stowage of cargo.  The Court first noted that if the shipowner held an express agreement of indemnity such as through insurance or a formal contract with the stevedorer, there would be no question that it would be enforceable.  Ryan, id. at 132.

On the other hand, the agreement in question provided only that Ryan would perform stevedoring operations, including stowage of the pulpboard rolls which caused the injury. The Court concluded that such an

> agreement necessarily includes [Ryan's] obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of [the] stevedoring contract. It is [Ryan's] warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of [Ryan's] stevedoring service.

Ryan, 350 U.S. at 133-134.

As the Second Circuit Court of Appeals has explained, Ryan indemnity comes into play when

> a shipowner, relying on the expertise of another party (contractor), enters into a contract whereby the contractor agrees to perform services without supervision or control by the shipowner; the improper, unsafe or incompetent execution of such services would foreseeably render the vessel unseaworthy or bring into play a pre-existing unseaworthy condition; and the shipowner would thereby be exposed to liability regardless of fault.

Fairmont Shipping Corp. v. Chevron International Oil Co., Inc., 511 F.2d 1252, 1258 (2d Cir.), cert. denied, 423 U.S. 838 (1975).

The rationale for implying a warranty of workmanlike service by a contractor who takes control of a ship is that the contractor is better situated to avoid accidents while the vessel

8

is under his control than is the shipowner who, at that time, is "powerless to minimize the risk." <u>Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.</u>, 376 U.S. 315, 324 (1964).

JAR rejects Ingram's indemnity claim, describing <u>Ryan</u> as "a 49-year old doctrine [which] many courts and commentators believe is outdated and not [in] keeping with comparative fault principles now prevalent in the general maritime law." (Reply Brief of JAR, Docket No. 61, "JAR Reply," at 2.) However, while one holding of <u>Ryan</u> (not relevant here) was subsequently superseded by amendments to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), the Supreme Court has revisited the "warranty of workmanlike service" holding on numerous occasions. *See*, e.g., <u>Weyerhaeuser S.S. Co. v. Nacirema Co.</u>, 355 U.S. 563, 567-568 (1958); <u>Crumady v. *The Joachim Hendrik Fisser*</u>, 358 U.S. 423, 417 (1959); <u>Waterman S.S. Corp. v. Dugan & McNamara, Inc.</u>, 364 U.S. 421, 423-425 (1960); <u>Italia Societa</u>, 376 U.S. at 318-319; <u>Edmonds v. Compagnie Generale Transatlantique</u>, 443 U.S. 256, 262 (1979). As recently as 1996, the Court referred to <u>Ryan</u>, stating that

> We think petitioner's reliance on <u>Ryan</u> . . . is likewise misplaced; there, in an action between private parties, we held that the stevedore was liable to the shipowner for the amount the latter paid in damages to an injured employee of the former. Here petitioner claims a breach of warranty by its customer, not by its seller and supplier.

<u>Hercules, Inc. v. United States</u>, 516 U.S. 417 (1996).

9

Had the Court considered the breach of warranty holding of Ryan to no longer be good law, it would presumably have said so, rather than distinguishing between Hercules and Ryan on the basis of who allegedly breached the warranty of workmanlike service.

The Third Circuit has explicitly adopted - but not subsequently rejected - the doctrine of Ryan indemnity. *See* Cooper v. Loper, 923 F.2d 1045, 1051 (3rd Cir. 1991), concluding that Ryan-type indemnity actions are not resolved by tort principles of contribution because Ryan actions are based on contract, *citing* Italia Societa, 376 U.S. at 321; *also* SPM Corp. v. M/V Ming Moon, 22 F.3d 523, 526 (3d Cir. 1994), describing Ryan indemnity as a "long-standing, judicially created, doctrine that stevedores and other contractors give shipowners an implied warranty of 'workmanlike' services." We find no reason to depart from these precedents and reject the Ryan doctrine as JAR urges us to do.

JAR also argues that because neither J.A.R. Barge Lines nor Mon River Towing is a stevedore, and because none of the other parties involved in Mr. Smith's accident are in roles similar to those of the parties in Ryan, Ingram's assertion that it is potentially entitled to relief on the basis of that case is "factually and/or legally inapposite." (JAR Reply at 5-6.) We need not dwell on this argument inasmuch as Ryan indemnification principles have been applied in numerous cases involving maritime

contractors other than stevedores. In <u>United N.Y. Sandy Hook Pilots Ass'n v. Rodermond Industries</u>, 394 F.2d 65, 71 (3d Cir. 1968), where precisely this argument was raised, the Court noted that the <u>Ryan</u> doctrine has been "frequently extended to non-stevedore maritime contractors." *See*, for example, the types of contracted services in <u>American Export Lines v. Norfolk Shipbuilding & Drydock Corp.</u>, 336 F.2d 525 (4th Cir. 1964) (shipyard service); <u>H & H Ship Serv. Co. v. Weyerhaeuser Line</u>, 382 F.2d 711 (9th Cir. 1967) (cleaning and painting); <u>In re Oil Spill by *Amoco Cadiz*</u>, 699 F.2d 909, 915 (7th Cir.), *cert. denied sub nom* <u>Astilleros Espanoles, S.A. v. Standard Oil Co.</u>, 464 U.S. 864 (1983) (ship design and construction); <u>Universal Am. Barge Corp. v. J-Chem, Inc.</u>, 946 F.2d 1131 (5th Cir. 1992) (cargo fumigation); <u>*La Esperanza de P.R.* v. Perez y Cia. de P.R.</u>, 124 F.3d 10 (1st Cir. 1997) (ship repairs); and <u>Vierling v. Celebrity Cruises, Inc.</u>, 339 F.3d 1309 (11th Cir. 2003) (port authority responsible for loading passengers aboard a cruise ship). In sum, the general consensus among courts which recognize the <u>Ryan</u> doctrine is that questions as to the scope of the rule are to be "liberally construed . . . in favor of the shipowner." <u>Lusich v. Bloomfield S.S. Co.</u>, 355 F.2d 770, 776 (5th Cir. 1966).[3]

---

[3] The Court recognizes that the Fifth Circuit subsequently held that <u>Ryan</u> indemnity is no longer the standard for appropriating damages. *See* <u>Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.</u>, 651 F.2d 1096, 1100 (5th Cir. 1981), relying instead on the general rule of comparative fault and apportionment of damages

JAR also contends that the "vast majority of courts" hold that towing companies do not owe a contractual duty but only a duty of reasonable care to shipowners.  (JAR Reply at 6.)  While we have been unable to identify any case from the Third Circuit Court of Appeals to refute that position,[4] a case from the Fourth Circuit has explicitly held that

> a contract of towage . . . gives rise to an implied warranty of workmanlike service.  The shipowner turns his vessel over to the control of the tug owner and relies on the latter's expertise in conducting safe towing operations.  The tug does not of course become an insurer against accidents; the extent of the warranty depends on the circumstances of the case relating to control, supervision, and expertise.

Tebbs v. Baker-Whiteley Towing Co., 407 F.2d 1055, 1058 (4th Cir. 1969)(internal quotation omitted), citing cases from the Second, Fifth and Ninth Circuits.

Nor is the Fourth Circuit alone in this position.  See,

---

announced in United States v. Reliable Transfer Co., Inc., 421 U.S. 397, 407 (1975).  But see, Verdin v. C & B Boat Co., 860 F.2d 150, 156 (5th Cir. 1988), noting without further analysis that, "We do not doubt . . . that Ryan still has valid application in some cases not involving workers covered by the [Longshore and Harbor Workers' Compensation Act]" and Walters v. Tidewater Fleet, 847 F. Supp. 464, 469 (E.D. La. 1994), applying the warranty of workmanlike service in the context of a towing incident, based on its conclusion that in Hercules, Inc. v. Stevens Shipping Co., 698 F.2d 726 (5th Cir. 1983), the Fifth Circuit had "expressly refused" to overrule Stevens v. East-West Towing Co., Inc., 649 F.2d 1104, 1109 (5th Cir. 1981), cert. denied, 454 U.S. 1145 (1982) in which it applied the warranty to a towage contract in a personal injury case.  It thus appears that even the Fifth Circuit has not entirely abandoned the Ryan doctrine but has simply restricted its reach.

[4] See In re McAllister Towing & Transp. Co., CA No. 02-858, 2004 U.S. Dist. LEXIS 18156, *18-*23 (E.D. Pa. Sept. 9, 2004), discussing Ryan and Fairmont in the context of a towage accident, but declining to apply the Ryan doctrine based on the facts of the case and the relationship of the parties.

e.g., Dunbar v. Henry DuBois' Sons Co., 275 F.2d 304 (2d Cir. 1960) (towing company owed contractual implied warranty of workmanlike performance to derrick owner for the death of the latter's employee during towing); United States v. Tug Manzanillo, 310 F.2d 220, 222 (9th Cir. 1962) (affirming decision against owners of the tug who allowed unsafe conditions to exist, deeming such conditions a violation of the contract with the shipper). As the court pointed out in Singer v. Dorr, in towage contracts,

> there is an implied warranty of workmanlike service, that is, an implied obligation to tow properly and safely, owed by a tug to a barge - the very nature of the towing agreement necessarily implies an obligation to tow properly and safely, and competency and safety are essential elements of the towing service undertaken.

Singer v. Dorr, 272 F. Supp. 931, 935 (E.D. La. 1967).

JAR denies that there is any contract which would give rise to Ryan indemnity; if that is true, the issue is moot. However, at this juncture, the Court will not preclude Ingram from pursuing this legal theory.

JAR further argues that under the holding of Stevens v. The White City, 285 U.S. 195 (1932), the duty of a tug to its tow is exclusively a matter of tort law, as opposed to a "duty endowed with any contractual or warranty-like attributes." (JAR Reply at 6.) JAR bases this argument on a statement in Stevens where the Court noted, "It has long been settled that suit by the owner of

a tow against her tug to recover for an injury to the tow caused by negligence on the part of the tug is a suit *ex delicto* and not *ex contractu*." Id. at 201. While we need not consider this argument in detail, we do note that Stevens involved a claim for property damage. As one court has pointed out that case "did not reject a warranty theory or even discuss a warranty theory; the Court did not have that issue before it. White City did not involve joint tortfeasors or theories of indemnity, and that the case did not involve a personal injury claim seems noteworthy, too." Walters v. Tidewater Fleet, 847 F. Supp. 464, 469 (E.D. La. 1994); *see also* Fraser River Pile & Dredge Ltd. v. Empire Tug Boats, Ltd., T-1631-93, 1995 AMC 1558, 1568 (Fed. Ct. Can. Mar. 21, 1995), describing Stevens as a "strange" decision in which the reasoning may have hinged on the fact that the tugboat operators did not have full possession and control of the tow. The facts on which the Walters court distinguished Stevens may also be present here. Again, while discovery in this matter is underway, the Court declines to dismiss the JAR parties until the full scope of the claims raised by Ingram and Mr. Smith has been determined.

Finally, JAR argues that Ingram's indemnity claim fails because Ingram did not owe Mr. Smith a warranty of seaworthiness, without which it has no liability to him. (JAR Reply at 8-9, *citing* Kermarec v. Compagnie Generale Transatlantique, 358 U.S.

14

625 (1959), together with cases from the Fifth and Ninth Circuits.)  However, as Ingram points out, <u>Kermarec</u> is distinguishable on its facts,[5] and the Third Circuit has not yet specifically adopted the position that a seaman cannot assert an unseaworthiness claim against a non-employer's vessel. (Ingram Barge Company's Sur-reply to Reply Brief, Docket No. 64, at 11-12.)  Moreover, both Mr. Smith and the JAR parties have explicitly asserted claims of unseaworthiness and negligence against Ingram. (<u>Id.</u> at 12-14.)  As noted above, the Court premised its approval of the settlement agreement and its subsequent enforcement of the indemnification clause therein on the understanding that the claims and/or defenses of parties other than JAR would not be negatively affected.  JAR may, if appropriate, revisit this argument when those claims and defenses have been more clearly identified.

The Motion for Judgment on the Pleadings is therefore denied

---

[5] The injured party in <u>Kermarec</u> claiming unseaworthiness and negligence on the part of the shipowner/defendant was not a seaman, but rather a social guest of a member of the ship's crew.  <u>Kemarec</u>, 358 U.S. at 626.  The Court held that the unseaworthiness claim could not be maintained because the plaintiff was "not a member of the ship's company, nor of that broadened class of workmen to whom the admiralty law has latterly extended the absolute right to a seaworthy ship."  <u>Id.</u> at 629.  Instead, the duty of the shipowner to those not in the two previously described classes is "the duty of exercising reasonable care under the circumstances of each case."  <u>Id.</u> at 632.

without prejudice.  An appropriate Order follows.

                                       */s/ William L. Standish*
                                       William L. Standish
                                       U.S. District Judge

cc:   Frederick B. Goldsmith, Esq.
      Blumling & Gusky, LLP
      1200 Koppers Building
      436 Seventh Avenue
      Pittsburgh, PA 15219

      Meredith L. Lawrence, Esq.
      Meredith L. Lawrence, P.S.C.
      301 Second Street
      P.O. Box 1330
      Warsaw, KY  41095

      Leonard Fornella, Esq.
      Kenneth F. Klanica, Esq.
      Juliet Leopardi, Esq.
      Heintzman, Warren, Wise & Fornella, PC
      The Gulf Tower, 35th Floor
      707 Grant Street
      Pittsburgh, PA  15219

      Dennis A. Watson, Esq.
      Holly M. Whalen, Esq.
      Michael K. Feeney, Esq.
      Grogan Graffam, P.C.
      Four Gateway Center, 12th Floor
      Pittsburgh, PA 15222-1009