IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE COMPLAINT OF          )
J.A.R. BARGE LINES, L.P., AS OWNER, AND     )
MON RIVER TOWING, INC., AS OWNER *PRO*      )
*HAC VICE*, OF THE M/V *ROSE G.*, FOR        )          Civil Action No. 03-163
EXONERATION FROM AND/OR LIMITATION          )
OF LIABILITY                                 )

## MEMORANDUM OPINION

## I.      INTRODUCTION

The facts of this case are set out in detail in the Court's  recent Memorandum Opinion in the above-captioned case and the companion cases consolidated with it.  *See* In re J.A.R. Barge Lines, *et al.*, CA Nos. 03-163, 03-180, 04-753, and 04-1611, 2007 U.S. Dist. LEXIS 13608 (W.D. Pa. Feb. 28, 2007).  On March 7, 2007, Mark Allen Smith and Mon River Towing, Inc. ("Smith" and "Mon River," respectively) filed a Motion to Alter and/or Amend Judgment (Doc. No. 256, "the Motion"), seeking relief from the Order issued simultaneously with the Memorandum Opinion. (Doc. No. 255.)  On March 20, 2007, they filed an Amended Motion to Alter and/or Amend Judgment.  (Doc. No. 260, "the Amended Motion.")  After careful consideration, for the reasons discussed below, both Motions are denied.

## II.     MOTION FOR RECONSIDERATION OR, ALTERNATIVELY,
##         MOTION TO ALTER AND/OR AMEND JUDGMENT

A.      Federal Rule of Civil Procedure 59(e)

Smith and Mon River bring their Motions pursuant to Federal Rule of Civil Procedure 59(e) or, alternatively, Rule 60(b).  Federal Rule of Civil Procedure 59(e) allows a party to move to amend or alter a judgment within ten days after entry thereof.[1]  A motion under Rule 59(e) is a device to relitigate the original issue decided by the district court, and alleges legal error.  United

---

[1]  Although the Order entered on February 28, 2007, was not a final judgment in the strictest sense of the term, it did dismiss all the claims raised by Smith and/or Mon River against the other parties in this and the related cases.

States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003) (internal citations and quotations omitted). Although Rule 59 does not specifically mention a motion for reconsideration, such a motion is regarded as "the functional equivalent of a Rule 59 motion." Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1986).

A court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. Max's Seafood Café by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999), citing North River Ins. Co. v. Cigna Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Smith "reincorporates each and every objection to the Special Master's Report and Recommendation made by him, and moves the Court to sustain his objections in their entirety." (Motion at 2.)  He has not stated in the Motion or Amended Motion which prong of the North River test he believes is applicable.  If, however, the Court broadly construes the pleadings in his favor, it appears his arguments can only rest on the third prong inasmuch as he cites no change in controlling law nor new evidence in either the original or amended motion.

Where the basis of the motion for reconsideration is to correct a manifest injustice, the party must persuade the court not only that its prior decision was wrong, "but that it was clearly wrong and that adherence to the decision would create a manifest injustice."  In re City of Philadelphia Litig., 158 F.3d 711, 720-721 (3d Cir. 1998).  "Motions for reconsideration should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." Pennsylvania Ins. Guar. Ass'n v. Trabosh, 812 F. Supp. 522, 524 (E.D. Pa. 1992).  "A district court has considerable discretion in deciding whether to grant or deny a motion to alter a judgment." Hale v. Townley, 45 F.3d 914, 921 (5th Cir. 1995).  In exercising this discretion, a district court must "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts."  Id.

B.    Federal Rule of Civil Procedure 60(b)

Under Federal Rule of Civil Procedure 60(b) a party may seek relief from a final judgment, order, or proceeding for any one of six reasons, i.e.,

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b).

Although a motion pursuant to subsections (1) through (3) must be brought within one year of the final judgment, order or proceeding in question, motions based in subsections (4) through (6) may be brought within a "reasonable" time, a determination made on a case-by-case basis at the discretion of the court.  Project Mgmt. Inst., Inc. v. Ireland, CA No. 03-1712, 2006 U.S. Dist. LEXIS 71007, *4-*6 (D. Pa. Sept. 29, 2006).  Smith and Mon River do not explain the basis for their Motions to the extent they may be based on Rule 60, stating only that "if the [C]ourt deems it appropriate, this may also be considered a Motion for Reconsideration and/or Clarification under FRCP 60(b)."  (Motion at 2.)  Since they offer no argument to support a conclusion that any of the first five subsections applies, their objections can only be considered under the "catch-all" provision of Rule 60(b)(6), i.e., "any other reason justifying relief from the operation of the judgment."

The United States Court of Appeals for the Third Circuit has held that relief under Rule 60(b)(6) is available only in cases evidencing "extraordinary circumstances" and may not be used as a substitute for an appeal.  Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir. 1975); Reform Party v. Allegheny County Dep't of Elections, 174 F.3d 305, 311 (3d Cir. 1999) (en banc).

III.   **ANALYSIS**

In their initial Motion, Smith and Mon River concentrate on three issues.  The primary focus

3

is "the Constitutional issues revolving around the amount Smith's payments [sic] in Special Master's fees." He argues that "because the Constitutional Issues of due process and equal rights in the context of access to courts are at odds with the alternative dispute resolution system the [C]ourt imposed on this case,[2] the February 28, 2007 order and memorandum opinion should be altered or amended to discuss these issues." (Motion at 2.) The concluding paragraph states, "For all the reasons stated hereinabove, the appointment of a Special Master should be overturned and Smith's objections to his report and recommendations should be sustained in their entirety." (Motion at 4.)

The Court interprets these succinct statements as arguments that Smith and Mon River seek reconsideration of (1) the Court's Pre-Trial Order of March 2, 2006, directing the parties to proceed before a Special Master; (2) the Court's Orders issued on June 22, August 21, and October 24, 2006 (Doc. Nos. 164, 200 and 219, respectively) that Smith pay one-quarter of the Special Master's fees and expenses; and (3) the Court's affirmation of the Special Master's Findings of Fact and Conclusions of Law which resulted in dismissal of Smith's and Mon River's claims in their entirety.

In the Amended Motion, Smith again reincorporates his objections to the Special Master's Report and Recommendations, "as well as each and every statement in [the original motion], and moves the [C]ourt to sustain his objections and motions in their entirety." (Amended Motion at 2.) In addition, he raises three new issues: (1) the Court's Order of August 22, 2005 (Doc. No. 92), enforcing the indemnification provisions of the Specific Release and Settlement Agreement between Mon River and Smith; (2) payment of attorneys' fees for counsel's representation of Mon

---

[2] Counsel for Smith and Mon River confuses the pilot program for Alternative Dispute Resolution ("ADR") in this District and the use of a Special Master. Despite reference to "the alternative dispute resolution system," these cases were never part of ADR program of the United States District Court for the Western District of Pennsylvania. Moreover, as discussed above, this Court did not "impose" a Special Master on the parties to these cases – the Special Master was appointed with consent.

River after August 22, 2005; and (3) the appearance of impropriety arising from the fact that one of the attorneys representing Ingram Barge Company ("Ingram") became employed on February 28, 2007, by the firm which employed the Special Master.

The threshold question is the timeliness of these motions for reconsideration.  Under Rule 59(e), the first Motion is unquestionably timely with regard to the Court's decision of February 28, 2007, since it was filed within ten days, i.e., on March 7, 2007.  With regard to the Order issued on March 2, 2006, the Motion is clearly *not* timely under Rule 59(e).  However, because the Court revisited Smith's and Mon River's objections to proceeding before the Special Master in its Memorandum Opinion (*see* In re J.A.R. Barge, 2007 U.S. Dist. LEXIS 13608 at *28-*33), concluding that they had waived any objections by their actions, the Court will consider this issue as incorporated into the February 28, 2007 Opinion.

On the other hand, the Court did not address the question of allocation of attorneys' fees in the February 28, 2007 Opinion, other than a passing mention in a footnote.  *See* In re J.A.R. Barge, 2007 U.S. Dist. LEXIS 13608, * 32, n.17.  The Court concludes, therefore, that Smith's and Mon River's Motion is untimely under Rule 59(e) as it applies to the Orders of June 22, August 21, and October 24, 2006. However, despite the tardiness of their objections, the Court will exercise its discretion and address them herein under Rule 60(b).  In reviewing the docket of these cases, the Court notes it did not issue an opinion which explained its decision that Smith should share in the expenses of the Special Master. That omission will be rectified in the discussion which follows.

The Amended Motion was not filed until fourteen days after the Opinion was issued.  (See Fed.R.Civ.P. 6(a), excluding Saturdays, Sundays and legal holidays when measuring a period of 11 days or less.)  Courts are divided on the question of whether an otherwise untimely amended motion for reconsideration under Rule 59(e) relates back to the date on which the original motion was filed.  *Compare*, e.g., Greer v. Works, CA No. 01-232, 2003 U.S. Dist. LEXIS 9782, *1-*3 and n.1 (N.D. Tex., June 2, 2003) *with* Daeda v. Lee County Sch. Dist., CA No. 01-567, 2006 U.S. Dist.

LEXIS 7223, *3-*4 (D. Fla. Feb. 3, 2006). The Court need not resolve this issue, however, because, as discussed below, even if the Amended Motion were considered timely filed, the Court finds no merit in Smith and Mon River's arguments therein.

      A.    <u>Appointment of the Special Master</u>

      Although the procedural history of this case was summarized in the February 28, 2007 Opinion (*see* <u>In re J.A.R. Barge</u>, 2007 U.S. Dist. LEXIS 13608 at *9-*14), the Court will address this issue in somewhat more detail in the context of Smith's and Mon River's current objection to the prior proceeding before the Special Master.

      The four related cases were originally assigned to Judge William L. Standish.  In the early winter of 2005, while the cases were in discovery, Judge Standish became ill and temporarily stepped down from the bench.  At the request of Chief Judge Donetta W. Ambrose, this Court held conferences in each of Judge Standish's 90 civil cases in an effort either to resolve the case by settlement or to ascertain its precise status before it was re-assigned to another judge of the U.S. District Court for the Western District of Pennsylvania.

      On March 1, 2006, a settlement/status conference was held in this and the related cases. After the parties[3] were unable to arrive at settlement terms, the Court proposed that because of the complexity of these admiralty cases involving three suits for exoneration and/or limitation of liability as well as Smith's civil suit, a myriad of claims and counterclaims, five corporate entities, three vessels, and a seaman, the most expeditious resolution would be for the parties to proceed before a Special Master.  (*See* Fed.R.Civ.P. 53(a)(1)(A) and (a)(1)(B)(I), allowing a court to appoint a special master "to perform duties consented to by the parties" or "to hold trial proceedings and make or recommend findings of fact on issues to be decided by the court without a jury if appointment is warranted by . . . some exceptional condition.")  The parties -– including Smith and

---

[3]   In addition to Ingram, the other parties in this and the related cases are Tri-River Marine, Inc., Tri-River Fleeting & Harbor Service, Inc., and the M/V *Bill Dyer* (collectively, "Tri-River.")

Mon River – all agreed to do so.

Pursuant to Fed.R.Civ.P. 53(b)(1), counsel were invited to recommend individuals whom they believed had the legal expertise in admiralty and maritime law needed to consider the four cases.  Several names were suggested by counsel from Pittsburgh but, understandably, counsel for Smith and Mon River who are based in Warsaw, Kentucky, had no immediate recommendations.[4]  Also, contrary to an assertion now made by Smith and Mon River that "only after the mediation failed did the clerk of court [sic] speak to the parties and advised [sic] them that a Special Master would be appointed, and in fact had to be named before the parties left" (Doc. No. 211 at 2), the contemporaneous notes of the law clerk assisting at the conference reflect that the possibility of appointing a special master was discussed with each party, including the names of candidates suggested and, in particular, the agreement by Smith and Mon River to pay one-third of the Special Master's fees.

The Court considered the four names suggested and selected Mark Shepard, Esq.,who verbally assured the undersigned that there was no ground for disqualification under 28 U.S.C. § 455.[5]  On March 2, 2006, the Court entered a Pre-Trial Order (Doc. No. 112) which stated the master's duties; the nature of the materials to be preserved and filed as the record of the master's activities; the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings and recommendations; and the basis, terms, and procedure for fixing the master's compensation.  *See* Rule 53(b)(2)(A) through (E).

After the March 1, 2006 conference, Smith and Mon River did *not* file an objection to the

---

[4]  As noted in the February 28, 2007 Opinion, Smith and Mon River subsequently argued that they should have been permitted to suggest candidates for the Special Master in addition to those recommended by Ingram and Tri-River at the settlement conference, but made no such request in writing to the Court.  In re J.A.R. Barge,  2007 U.S. Dist. LEXIS 13608 at * 32, n. 17.

[5]  The Court notes that no affidavit pursuant to Rule 53(b)(3) was entered into the docket or otherwise submitted to the Court.  However, no party has objected to this oversight.

agreement to proceed before the Special Master, nor to the March 2, 2006 Order. More than one month later, on April 5, 2006, their counsel incorrectly entered a pleading entitled "Renewed Motion for a Jury Trial and Objection to the Use of a Special Master" into the electronic court docket without identifying the pleading as a motion.[6] (Doc. No. 134.) Consequently, the Court was not aware that a motion was pending until September 29, 2006, when a properly docketed "Amendment to Smith and Mon River Towing's Memorandum in Support of Renewed Motion for a Jury Trial and Objection to the Use of a Special Master" brought this matter to the Court's attention. (*See* Doc. No. 207.)

In the interim, Smith and Mon River had participated fully in the events leading up to the evidentiary hearing held for five days in July 2006, meeting the deadlines assigned by the Court in the March 2, 2006 Pre-Trial Order, and complying with the orders of the Special Master, all without further objection to the Court or to the Special Master himself until after the Report and Recommendations were filed. In re J.A.R. Barge, 2007 U.S. Dist. LEXIS 13608 at *29-*33.

Smith and Mon River never clarify the legal basis for this part of their renewed objections. Although there is passing reference to "Constitutional Issues of due process and equal rights in the context of assess to courts" and to the Fifth and Fourteenth Amendments to the United States Constitution (Motion at 2 and note 1), they focus their arguments regarding constitutional issues on the question of whether Smith was obligated to pay a share of the Special Master's fees, not on the issue of proceeding before the Special Master. The Court concludes that Smith and Mon River suffered no manifest injustice by proceeding before a Special Master and reaffirms its

---

[6] When Tri-River brought to the attention of Smith and Mon River that even their initial objection to proceeding before the Special Master was not filed for more than a month after the Pre-Trial Order was entered (Doc. No. 209 at 2-3), Smith and Mon River responded only, "Taking one month to fully research and draft a well reasoned objection to a court order should be commended, not punished." (Doc. No. 211 at 3.) The Court fails to understand how attorneys as experienced as those employed by Smith and Mon River could require more than a month to research and draft a brief consisting of no more than three pages of legal argument, half of which had already been presented to the Court in previous pleadings.

conclusion that by proceeding before the Special Master for several months without renewing their

opposition to doing so, they waived those objections.

      B.    <u>Objection to Payment of the Special Master's Fees and Expenses</u>

      In the Pre-Trial Order of March 2, 2006, the Court directed:

> The compensation and costs for services rendered by the Special
> Master shall be allocated one-third to [Smith and Mon River], one-
> third to Ingram Barge Company and one-third to Tri-River Marine,
> Inc., and related parties.  If the parties cannot agree on the amount
> of compensation and costs for the Special Master, the Court shall
> set reasonable compensation and costs pursuant to Federal Rule of
> Civil Procedure 53(a) and assess the parties according to the fore-
> going allocation.

(Pre-Trial Order, ¶ 8.)

      In the Motion now pending, Smith raises a two-part objection to the payment of the Special

Master's fees.  First, he objects to the Court's Orders directing him to pay any part of the fees,

arguing that requiring him to do so imposes "an onerous or impossible condition" which effectively

creates an unconstitutional bar to his access as a seaman to the courts and that 28 U.S.C. § 1916

protects him from any obligation to share in those fees.[7]  (Motion at 2-4.)  Second, he suggests that

the Court reduce the fees because they are  "grossly excessive."  (<u>Id.</u> at 4.)

      Smith and Mon River did not explicitly object to paragraph 8 of the Pre-Trial Order in the

pleading filed on April  5, 2006.  Nor did they object prior to the time the first invoice for services

was filed on June 22, 2006.  The Court ordered that each of the "three parties remaining in this

action" pay one-third of the invoice.  (Doc. No. 165.)  Ingram sought clarification of this order,

pointing out that four parties actually remained and that although Smith and Mon River were now

represented by the same attorneys, "they are separate parties with separate claims and/or

---

[7] Section 1916 of Title 28 states:  "In all courts of the United States, seamen may institute and prosecute suits and appeals in their own names and for their own benefit for wages or salvage or the enforcement of laws enacted for their health or safety without prepaying fees or costs or furnishing security therefor."  28 U.S.C. § 1916.  Seamen's suit.

defenses being asserted against them or on their behalf" and thus each should be required to pay one-quarter of the fees. (Doc. No.166, ¶ 4.) In his response to this proposal, Smith reiterated his reliance on 28 U.S.C. § 1916, arguing that as a seaman, he should not have to pay any part of the fees, but that Mon River, Ingram and Tri-River should each pay one-third. (Doc. No. 169 at 2.) The Court agreed with Ingram's reasoning and amended its original order accordingly.

As Ingram correctly pointed out in its reply memorandum, 28 U.S.C. § 1916 was not intended to protect seamen from all fees and costs associated with litigating their claims in federal court, but only from the obligation of paying filing fees or other court costs at the time of instituting suit, from posting bond to secure the payment of costs, or from prepayment of Marshal's fees. (Doc. No. 170 at 2-3, *citing* Robert Force and Martin J. Norris, The Law of Seamen, Vol. 2, § 30:16 (5th ed. 2003).) Although Smith again relies in the pending Motion on 28 U.S.C. § 1916, he raises no arguments which were not made either at the time the Special Master submitted his first request for payment or in the amended Memorandum in Support of Renewed Motion for a Jury Trial and Objection to the Use of a Special Master. (Doc. No. 207 at 2-3.) This issue has been preserved for appeal and the Court declines to alter its previous determination that 28 U.S.C. § 1916 does not preclude Smith from paying a portion of the Special Master's fees and expenses.

As to the constitutional issues, Smith argues that the Court's requirement that he pay "a significant sum" in order to prosecute his seaman's claim is an unconstitutional bar to his access to the courts. (Motion at 3, *citing* Washington-Southern Nav. Co. v. Baltimore & Philadelphia S.B. Co., 263 U.S. 629 (1924); Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400 (5th Cir. 1987); Dongbu Express Co. v. Navios Corp., 944 F.Supp. 235 (S.D. N.Y. 1996); and Baylson v. Disciplinary Bd. of Supreme Court, 764 F. Supp. 328 (E.D. Pa. 1991).) The Court finds these cases unpersuasive inasmuch as none of them addresses either the constitutional right to seek redress in a court of law or the particular rights of seamen to proceed *in forma pauperis* or

otherwise access the courts.[8]  The latter issue is discussed in the first three cases cited by Smith and Mon River only in the context of noting that under 28 U.S.C. § 1916, seamen are not required to comply with the general rule that requires admiralty plaintiffs to post counter-security where the defendant has alleged counter-claims.

Smith analogizes between access to the courts and other fundamental rights guaranteed by the Constitution (e.g., voting rights, access to public education and access to public fora), and argues that the appropriate level of review in such "access cases" is strict scrutiny.  (Motion at 3-4, *citing* Trafelet v. Thompson, 444 U.S. 906 (1979); Certain Named & Unnamed Non-Citizen Children & Their Parents v. Texas, 448 U.S. 1327 (1980); and United States v. Am. Library Ass'n, 539 U.S. 194 (2003).)  He further argues that "no government interest can reasonably be linked to forcing an American Seaman . . . to pay the full brunt of a big city attorney's fees so he can have his constitutionally guaranteed day in court."  (Motion at 4.)  He also contends that if the Court's interest was to reduce docket overload, assignment of the case to a Special Master was not

---

[8]  Washington-Southern is unpersuasive because contrary to the description of the case provided by Smith and Mon River (Motion at 3), it did not involve a pauper seaman who was required to prepay litigation costs before bringing his case to trial, but rather the application of former Admiralty Rule 50 (now subsumed into the supplemental admiralty rules as Rule E (7)(a).)  The parties were the charterer and owner of two steamships, i.e., no seaman was involved in the litigation.  The Supreme Court referred to seaman merely in the context of noting that the district court's interpretation of Rule 50 would place an impossible or onerous condition on the right of seamen and other poor citizens to proceed in admiralty.  263 U.S. at 634-635.  Titan Navigation concerned a contractual dispute between a computer company and a shipowner; again, the fundamental issue was the posting of security in light of the defendant's counter-claims.  An exception to the general rule that security may be required where there are counter-claims is the language in Rule 50/Rule E(7) which permits a court to exercise its sound discretion and excuse the original plaintiff from posting such security where the plaintiff can show cause.  The Titan Navigation court noted such exceptions applied where the plaintiff was financially unable to post security, where the counterclaims were clearly frivolous, or where the plaintiffs were seamen seeking to pursue civil actions in their traditional privileged position as wards of the court.  808 F.2d at 403-404, *citing* 28 U.S.C. § 1916.  Dongbu Express, also a contract case not involving a seaman, is relevant to the facts herein only insofar as it identifies two principles which should guide courts when exercising their discretion in deciding whether to order counter-security:  placing the parties on an equality as regards security, and avoiding the imposition of burdensome costs on a plaintiff which might prevent him from bringing suit.  944 F.Supp. at 239.  Finally, Baylson involved neither admiralty law nor the right of seamen not to post security but rather the conflict among the Pennsylvania Rules of Professional Conduct, the Federal Rules of Criminal Procedure, attorney-client confidentiality law, and the function of the grand jury.  Washington-Southern is cited for the general principle that "no rule of court can . . . abrogate or modify the substantive law" (764 F.Supp. at 345), a principle not at issue in this matter.

narrowly tailored to accomplishing that goal.  Instead, assignment to a magistrate judge or a volunteer Special Master would have accomplished the same purpose.  He concludes that the Special Master's fee represents an unconstitutional bar to his access to courts and moves that it be "struck down."  (Id.)

While the Court does not disagree with Smith's contention that access to the court is a fundamental constitutional right, Smith has not been barred from the court by agreeing to proceed before a Special Master.  The appointment of a special master is specifically contemplated by the Federal Rules of Civil Procedure where, as here, "some exceptional condition" exists or where the parties agree on the duties to be performed. Fed.R.Civ.P. 53(a)(1).  Although it is true the Court could have sought agreement of the parties to proceed before a magistrate judge or an unpaid special master, Smith did not raise those options either at the conference on March 1, 2006, nor after receiving the Court's Pre-Trial Order which described how the Special Master's fees were to be allocated.

Finally, Smith's "strict scrutiny" argument is entirely misplaced.  That standard of review is applied when the government seeks to restrict a fundamental constitutional right or targets a suspect class through a state or federal statute.  In order to survive strict scrutiny, "a challenged **government action** must be narrowly tailored to advance a compelling governmental interest." Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 165 n.24 (3d Cir. 2002) (emphasis added), *cert. denied*, 539 U.S. 942 (2003).  No governmental statute or action is implicated here which would invoke consideration by this Court under strict scrutiny or any other standard of review.

Finally, Smith argues that the Special Master's fee should be reduced or eliminated so that it does not become a bar to his access to the courts.  (Motion at 4, *citing* Petition of New York, etc., 332 F.2d 1006 (2d Cir.), *cert. denied*, 379 U.S. 922 (1964); and Reed v. Cleveland Board of Education, 607 F.2d 737 (6th Cir. 1979).)  The Court has reviewed the invoices for services and costs incurred by the Special Master and does not find them excessive in light of the complexity

12

of the liability issues to be decided, the number of motions *in limine*, exhibits, depositions, and other pre- and post-hearing matters which required review by the Special Master, the length of the evidentiary hearing, and the thoroughness of his Report and Recommendations.   On the contrary, and based upon the Court's thirty years of litigation experience (including billing matters), the fees and expenses of the Special Master were reasonable, and his work and work product were excellent.

> C.      Objection to the Court's Affirmation of the
>          Special Master's Report and Recommendations

Smith states that his Motion "reincorporates each and every objection to the Special Master's Report and Recommendations made by him, and moves the [C]ourt to sustain his objections in their entirety." (Motion at 2.)  A motion for reconsideration must be more than a mere attempt to convince a court to rethink a decision it has already made. Colon v. Colonial Intermediate Unit 20, 443 F. Supp. 2d 659, 667 (M.D. Pa. 2006).  In short, nothing in Smith's motion even suggests specific points on which he believes the Court erred in its previous decision. The complete absence of any argument which would persuade the Court it made a clear error of law or fact in affirming the Special Master's recommendations is fatal to his motion.

> D.      Interpretation of the Settlement Agreement

In the Amended Motion, Smith "urges this Honorable Court to revisit the Order of August 22, 2005 . . . and to overturn and/or amend its order that Smith's attorney be required to represent Mon River Towing, who has been absent from this action for over a year." (Amended Motion at 2.)  In a related argument, Smith requests the Court to "determine the amount Mon River Towing must pay Smith's attorney's fees [sic] for representation of Mon River" because the Court's earlier order did not state that representation of Mon River "would be done for free."  (Amended Motion at 3.)

Judge Standish heard oral argument on this specific issue at a hearing over 18 months ago,

on August 11, 2005. (*See* Doc. No. 103, Transcript of Hearing, "Tr.") He ruled that in subsequent proceedings, counsel for Smith would represent Mon River, pursuant to Paragraph 11 of the Specific Release and Settlement Agreement (Doc. No. 27, Exhibit C) which required Smith to

> indemnify, defend, and hold harmless . . . Releasees[9] from any and all claims, demands, action, causes of action, suits or complaints that may be brought by any person, persons, firm, corporation or other entity against the Releasees, for injury, damage or loss of [Smith] arising out of the [events of January 21, 2003].

Counsel for Smith initially objected at the hearing, but agreed to comply on the condition that the former attorney for Mon River promptly transfer his case files and that any conflict in interest between Smith and Mon River would be addressed by the Court. In the interim between the August 2005 hearing and the Court's Opinion of February 28, 2007, Smith's counsel defended both parties, filing numerous motions with this Court and acting on behalf of Mon River during the proceedings before the Special Master. At no time during that 18-month period did Smith or Mon River object to the joint representation, nor did counsel object to representing both parties, ask the Court to resolve ethical conflicts, or pose the question of which party was to pay their legal fees.

In light of the time which has elapsed during which counsel for Smith and Mon River represented both parties without objection, the Court concludes the motion for reconsideration of its earlier ruling regarding interpretation of the Settlement Agreement is untimely even under Rule 60(b)(6) and is therefore denied.

E.    Exclusion of Ingram in the Indemnity Provision

Smith moves the Court to reconsider its decision of August 2005 that the indemnity provision in the Settlement Agreement specifically excluded Ingram's indemnity claim against Mon River Towing. (Amended Motion at 2.) He offers no facts, case law or even argument in support of this portion of his Amended Motion.

---

[9] "Releasees" was defined elsewhere in the agreement as Mon River Towing, J.A.R. Barge Lines, the M/V *Rose G.* and XL Specialty Insurance Company.

Paragraph 11 of the Settlement Agreement also contained the following language:

> Releasor does hereby further covenant and agree that he will never institute in the future any complaint, suit, action or cause of action, in law, in equity, or in admiralty, against the Releasees only, nor institute, prosecute or in any way aid in the institution or prosecution of any claim, demand, action, cause of action, suit or complaint for or on account of any damage, loss, injury or expense in consequence of the [events of January 21, 2003], whether such injury, damage, loss or expense is known or unknown, past, present or future. . . . This is a specific release to Releasees only, excluding all others inclusive of but not necessarily limited to Ingram Barge Company.

The Court ruled on August 22, 2005, that contrary to arguments raised by Smith which were carefully considered by the Court at that time, Paragraph 11 did require him to indemnify Mon River against claims raised by Ingram.  (Tr. at 35-36; Order of Court, Doc. No. 92.)  Smith raised no timely objection to that Order and did not move for reconsideration.  The Court concludes that its interpretation of the indemnity provision is a matter for appeal and the pending motion is untimely.

F.      "Appearance of Impropriety"

On March 14, 2007, Ingram filed a motion to substitute counsel, advising the Court that as of January 19, 2007, the shareholders of the firm representing Ingram had elected to dissolve as a professional corporation effective February 28, 2007.  (Doc. No. 257.)  One of the attorneys who had played a significant role in representing Ingram in these cases, Leonard Fornella, accepted a position with Babst, Calland, Clements & Zomnir, P.C., also effective February 28, 2007.  Babst Calland also employs Mark Shepard, Esq., who served as Special Master in these matters.

Smith and Mon River argue that this "unseemly" and "secret" liaison between counsel for Ingram and the Special Master requires disqualification of the Special Master under 28 U.S.C. § 455 and a new trial before a federal judge because Fornella and Shepard failed to "advise the court of their partnership while this case was proceeding."  (Amended Motion at 3-4.)

Even if a motion for reconsideration were the proper vehicle for raising this issue (which it is not inasmuch as no previous order of Court addresses the subject), Smith and Mon River

concede that the Special Master's role in these cases was completed on September 20, 2006, when he filed his Report and Recommendations.  (Amended Motion at 3.)  Their allegation of the appearance of impropriety is based on nothing more than sheer speculation that (1) Babst Calland had, prior to that date, decided to offer employment to Fornella when his firm dissolved more than five months later; (2) Fornella accepted such an offer; (3) the Special Master knew of these events; and (4) the Special Master consequently acted with bias in favor of Ingram.

The relevant language of 28 U.S.C. § 455 provides that a judge (and, by extension, a special master acting in the capacity of a judge) shall "disqualify himself . . . (1) where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1).   Whether there is a basis for questioning the special master's impartiality is determined by an objective standard.   Cobell v. Norton, 237 F. Supp.2d 71, 99 (D. C. Cir. 2003) (internal citations and quotations omitted).

While Smith and Mon River correctly note that the inquiry is conducted from the point of view of a reasonable observer informed of all the surrounding facts and circumstances (Amended Motion at 3-4), their implication that the Special Master had a personal bias or prejudice in favor of Ingram is without factual foundation.  Although the Special Master recommended that Ingram be exonerated from liability in these cases and concluded it had a valid indemnity claim against Mon River, he explicitly refused to award attorneys' fees and costs of litigation to Ingram.  As the Court explained at length in its February 28, 2007 Opinion, this was an erroneous conclusion.  In re J.A.R. Barge, 2007 U.S. Dist. LEXIS 13608 at *112-*127, referring to Report and Recommendations, Conclusions of Law 19-27.   The Special Master's finding that Ingram should *not* prevail on its indemnification claim would lead a reasonable person to conclude that he was eminently impartial.  That is, it seems profoundly inconsistent for the Special Master to have maintained a "secret" and biased "partnership" with Fornella before filing his Report and

16

Recommendations, yet refuse to rule in Ingram's favor where it mattered most, i.e., awarding attorneys' fees and costs of litigation.  *See* <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994) ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the . . . proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.")

The Motion filed at Docket No. 256 by Mark Allen Smith and Mon River Towing, Inc., to alter or amend the judgment of this Court as stated in Docket No. 255 and the Amended Motion to alter or amend filed at Docket No. 260 are hereby denied.  An appropriate Order follows.


/s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

Dated:  March 23, 2007

cc:      Counsel of Record

Special Master Mark D. Shepard, Esq.
Babst, Calland, Clements & Zomnir
Two Gateway Center
8th Floor
Pittsburgh, PA 15222
Email: mshepard@bccz.com

17