IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE COMPLAINT OF )
J.A.R. BARGE LINES, L.P., AS OWNER, AND )
MON RIVER TOWING, INC., AS OWNER *PRO* )
*HAC VICE*, OF THE M/V *ROSE G.*, FOR ) Civil Action No. 03-163
EXONERATION FROM AND/OR LIMITATION ) **ELECTRONICALLY FILED**
OF LIABILITY )

**MEMORANDUM OPINION RE: INGRAM'S PETITION FOR ATTORNEYS' FEES**

Complainant/Claimant Ingram Barge Company ("Ingram") filed a Petition for Attorneys'

Fees, Expenses and Costs of Litigation (Doc. No. 259, "the Petition"), in the amount of $300,171.90,

against J.A.R. Barge Lines, L.P., and Mon River Towing, Inc. ("Mon River"), jointly and severally.

Counsel of record for Mon River are Justin L. Lawrence and Meredith L. Lawrence of

Warsaw, Kentucky.  They also are counsel of record for Claimant Mark Allen Smith.  Counsel for

Ingram is Leonard Fornella of Pittsburgh, Pennsylvania.

I.   Petition for Attorneys' Fees, Expenses and Costs of Litigation

By Order dated February 28, 2007  (Doc. No. 255), this Court directed as follows:

   8.    On or before March 9, 2007, Mon River and Ingram shall meet and confer to attempt
to reach an agreement on Ingram's attorneys' fees, expenses and costs of litigation
associated with defending against the claims by Smith and Mon River.

   9.    If the parties agree on the amount of Ingram's fees and expenses, they shall file a
joint stipulation as on the agreed-to amount by March 12, 2007.

   10.    If the parties do not reach agreement on the amount due to Ingram, Ingram shall file
a petition for attorneys' fees, expenses, and costs of litigation on or before 12:00
noon on March 16, 2007, and Mon River shall file its opposition/response to the
petition on or before 12:00 noon on March 23, 2007.

   11.    If the parties do not reach agreement on the amount due to Ingram, a hearing shall be
held before this Court in Courtroom 7C, 7th Floor, United States Courthouse, 700
Grant Street, Pittsburgh, Pennsylvania, at 9:00 AM on March 27, 2007.

The parties did not reach agreement. Thus, Ingram filed its Petition and Mon River filed its Response to Ingram's Petition for Attorneys' Fees, Expenses, and Costs (Doc. No. 261, "Response.") A hearing and argument on the Petition was held on March 27, 2007.

Although the Petition contained numerous exhibits (more than 1 inch of paper) setting forth, line by line, the detailed billing statements of the legal work performed and related costs and expenses (Doc. No. 259-3 through 259-12) totaling $316,602.90, the Response failed to dispute the accuracy of any particular entry or entries of time, task, cost, or expense, and failed to dispute any particular hourly rate(s). Instead, the Response simply argued that the total amount is "unreasonable in light of the procedural history of the case," as follows:

> D. *Arguendo*, [Mon River] believes that the amount of money requested by Ingram is unreasonable in light of the procedural history of this case. The unreasonableness is evident when one considers the amount of Ingram's requested attorneys' fees compared to the settlement offer made to Ingram in this action. At or around the time of [Mon River's] settlement with Smith, Smith also made an offer to settle his claims against Ingram in the amount of Seventy-Five Thousand Dollars ($75,000). Ingram rebuffed this settlement offer, and proceeded to rack up a legal bill four times higher than the settlement demand that would have released them from the case years ago. Beyond the settlement figure they could have had, Ingram's spending is gratuitous and astonishing in its breadth, rightfully shocking the consciousness of the court. Ingram's excess spending - to the tune of Two Hundred, Twenty-Five Thousand Dollars ($225,000) - can only have been for the purpose of punishing the parties that dared sue Ingram, both by driving up the other parties' fees and costs, and by increasing the penalty and fear of losing the suit to Ingram. However, as the special master noted in his Report and Recommendation, the claims against Ingram were not frivolous, and non-frivolous lawsuits should not be punished simply because one party was denied judgment. To order indemnity in the amount that Ingram has claimed is to condone and reward the defense practice of piling up high legal fees as a "scare tactic" to pre-emptively ward off future lawsuits from potentially deserving plaintiffs. Such tactics have a chilling effect on litigation, and must be prohibited by this Honorable Court.
>
> Because Ingram has, over the last eighteen (18) months, artificially increased their litigation expenses to four times the amount in which they could have settled, their Petition for Attorneys' Fees should be limited to the amount of settlement, Seventy-Five Thousand Dollars ($75,000).

(Response at 3-4.)

Mon River's opposition to Ingram's claim for attorneys' fees is deficient.  Simply stated, Mon River has failed to submit evidence to controvert the specifics of requested attorneys' fees (which are supported by counsel's detailed time records) and related costs and expenses.  No additional argument in opposition to the Petition was offered by Mon River at the hearing.

With respect to the hourly billing rates charged by Ingram's counsel, the Court finds that such rates are reasonable based upon the local community standards, counsel's level of experience and skill, and the Court's personal experience in such matters.  The attorneys' hourly rates were $160 or less at the beginning of the case in 2003, and said rates were not increased as the case proceeded through 2004, 2005, 2006, and 2007.  These rates are at or below market, and the lack of rate increase demonstrates a very conservative (and laudable) billing practice.

As to the number of hours for which attorneys' fees are sought, the Court, after undertaking its personal review (before the March 27, 2007 hearing) of counsel's time sheets, line by line, a process with which this Court is intimately familiar, finds that the total time spent litigating this case was not only reasonable, but efficient.  The Court further finds that Ingram's counsel did not submit charges for unnecessary, redundant or excessive hours.  Additionally, the Court finds that the narrative of the billing entries are detailed and particularized.  The experts' statements for services performed (Petition Exhibits D through H, Doc. Nos. 259-7 through 259-11) likewise are reasonable in terms of hours, hourly rates, tasks, and costs, in light of the issues raised in this matter.

Counsel for Mon River have litigated and re-litigated practically every possible issue in this case.  Said counsel cannot now complain about the magnitude of opposing counsel's attorneys' fees, costs, and expenses.  Further, counsel's position relating to an alleged possible settlement scenario

is not reasonable and cannot set some artificial ceiling on Ingram's Petition.  The Court was intimately involved in the unsuccessful settlement process in this case, and found the positions of Ingram's counsel to be reasonable, professional, and in the best interest of his client.  Moreover, as counsel for Ingram pointed out at the hearing, the negotiations to which counsel for Mon River refers were to settle the disputes between Ingram and Claimant Smith, not to settle the indemnification claim of Ingram against Mon River.  The Court also agrees with counsel for Ingram that under Rule 408 of the Federal Rules of Evidence, the fact that the parties engaged in settlement negotiations may not be offered as evidence to dispute the validity or amount of Ingram's claim.

II.    Other Objections by Mon River

Mon River raises four related arguments with regard to indemnification and/or payment of Ingram's fees.  First, counsel state that they were last in contact with Mon River on July 17, 2006, and that Mon River has never authorized them to agree to pay any fees or costs to any party to this litigation, including Ingram. (Response at 2.)  In a related argument, Mon River objects to any order requiring it to indemnify Ingram for these expenses because Ingram's attorney explicitly refused counsel's request to forward the Petition exhibits to Mon River's insurer.  Because Mon River cannot share the documents with its insurer, Ingram's actions have thwarted Mon River's ability to determine and/or interpret coverage on this matter.  (Id.)

The Court concludes the lack of communication between Mon River and its counsel does not preclude this Court from determining the fees for which Ingram is to be indemnified by Mon River. Moreover, although counsel may have been disadvantaged by lack of communication with Mon River since July 2006, they never moved to withdraw as counsel.  Mon River has also waived the

second argument by failing to seek the Court's assistance on the related issue, e.g., by filing a motion to compel Ingram to allow counsel to share the exhibits filed under seal with Mon River's insurer.

Mon River also reasserts "every argument and objection it has made against Ingram's indemnity claim in the course of this litigation" and "stands firm that no action or omission on its part gave rise to any indemnity liability and urges the court to rescind and withdraw its previous order awarding attorney's fees to Ingram." (Response at 2.)   The Court has repeatedly addressed the issue of Ingram's indemnity claim against Mon River – at the hearing to approve the Specific Release and Settlement Agreement held on April 2, 2004 (*see* transcript of the hearing at Doc. No. 32); at the hearing on August 11, 2005, to enforce the Settlement Agreement (*see* transcript of the hearing at Doc. No. 103); in the Orders which followed that hearing (Doc. Nos. 92 and 93); in its Memorandum Opinions published at In re J.A.R. Barge Lines, L.P., CA No. 03-163, 2005 U.S. Dist. LEXIS 22578 (W.D. Pa. Oct. 5, 2005), and at 2007 U.S. Dist. LEXIS 13608; and in its Memorandum Opinion of March 23, 2007, at 13-15 (Doc. No. 262, "March 23, 2007 Opinion.") This issue has been well preserved for appeal and the Court declines to revisit the issue once more.

Similarly, the Court addressed in detail the events which led to its conclusion that Mon River breached its implied duty of workmanlike performance in providing harbor boat services to Ingram which resulted in Smith's injuries and, consequently, its conclusion that Ingram was entitled to indemnification for its attorneys' fees and costs of litigation.  *See* In re J.A.R. Barge Lines, 2007 U.S. Dist. LEXIS 13608, *116-*127, applying the facts of this case to the three elements of a Ryan indemnity claim.   Again, this issue has been preserved for appeal.

Finally, Mon River objects to payment of these fees and expenses because "Ingram has now caused a cloud of impropriety to appear herein" inasmuch as Ingram's attorney is now employed by

the firm which employs the Special Master.  Mon River reiterates its objections to proceeding before a Special Master in this case and now objects to this Special Master "individually and specifically." (Response at 2-3.)  Again, the Court declines to revisit this issue.  The issue of proceeding before the Special Master has been addressed at length.  *See* 2007 U.S. Dist. LEXIS 13608 at *28-*33, and March 23, 2007 Opinion at 6-9. The objection to the findings of the Special Master because of purportedly improper events which occurred some five months after he filed his Report and Recommendations has also been addressed.  *See* March 23, 2007 Opinion at 15-17.  As counsel for Ingram pointed out at the hearing, any monies recouped through the indemnification claim are for the benefit of Ingram Barge Company, not the law firm representing Ingram.

III.    Conclusion

The objections to the Petition filed by Mon River are overruled.  The Court will reduce the amount of the Petition by eliminating the attorneys' fees, expenses and costs set forth in Exhibit C (Doc. No. 259-6) of $4,063.07, relating to a companion case brought by Claimant Smith in the United States District Court for the Southern District of Ohio at Civil Action No. 1:03-cv-99.  Also, Ingram has already reduced the total amount sought in its Petition by not including therein the attorneys' fees, costs, and expenses relating to pursuing the indemnity claim (*see* Doc. No. 259-12) (approximately $16,431.00).  The Court agrees with said allocation between the main case and the indemnity claim.  Thus, Ingram's total attorneys' fees, costs and expenses of $316,602.90 are reduced by $4,063.07 and $16,431.00, for a total of $296,108.83.  An appropriate Order follows.

                              **SO ORDERED** this 28th day of March, 2007.

                               s/ Arthur J. Schwab
                              Arthur J. Schwab
                              United States District Judge

cc:     All Registered ECF Counsel and Parties

                                        -6-