IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE COMPLAINT OF        )
J.A.R. BARGE LINES, L.P., AS OWNER, AND   )
MON RIVER TOWING, INC., AS OWNER *PRO*    )
*HAC VICE*, OF THE M/V *ROSE G.*, FOR      )   Civil Action No. 03-163
EXONERATION FROM AND/OR LIMITATION        )
OF LIABILITY                             )

## MEMORANDUM OPINION

Pending before the Court is a motion by J.A.R. Barge Lines, LLC ("JAR LLC") and Sylvan

Investments, Inc. ("Sylvan"), for leave to file six post-judgment motions.  (Doc. No. 284-1, "the

Motion.")  For the reasons discussed below, the Motion is denied.

I.      **Procedural History**

The facts of this case are set out in detail in the Court's recent Memorandum Opinion in the

above-captioned case and the companion cases consolidated with it. *See* In re J.A.R. Barge Lines,

*et al.*, CA Nos. 03-163, 03-180, 04-753, and 04-1611, 2007 U.S. Dist. LEXIS 13608 (W.D. Pa. Feb.

28, 2007) ("the February 28 Opinion.")  As the parties are well-aware, following a hearing on March

27, 2007, the Court entered an Order directing JAR Barge Lines, L.P. ("JAR LP") and Mon River

Towing, Inc. ("MRT"), jointly and severally, to pay attorneys' fees, expenses, and costs of litigation

incurred by Ingram Barge Company ("Ingram") through March 28, 2007, in the amount of

$296,108.83.  (Doc. No. 265, "the March 28 Order.")

At the hearing, Justin M. Lawrence, Esq., and Meredith L. Lawrence, Esq. (collectively, "the

Lawrences"), stated that in light of the lack of cooperation from their clients JAR LP and MRT, they

wished to withdraw as counsel for those parties.  The Court indicated a willingness to entertain

such a motion.  In support of the Lawrences' motion filed two days later, they submitted affidavits

stating that after the hearing on March 27, 2007, they contacted James L. Guttman ("Guttman"),

the former owner and chief executive officer of MRT, who informed them that MRT had been sold

and JAR LP dissolved more than a year earlier, on January 20, 2006. According to the sworn statements, Guttman was unhelpful in providing information about who should be contacted as the new owner of MRT; similarly, representatives of MRT's insurance company, XL Speciality Insurance Co. ("XL Insurance"), had stated they would not provide any guidance to the Lawrences. (See Doc. No. 266 and attachments thereto.)

In response to the information in the Lawrences' affidavits, Ingram immediately filed a motion to amend the judgment of March 28, 2007, to include JAR LLC and Sylvan. (Doc. No. 267.) According to the motion, as of March 29, 2007, the Pennsylvania Department of State corporate registry website[1] showed: (1) MRT was listed as an active corporation with Guttman identified as president and with the same corporate address as that used by MRT before the January 20, 2006 sale; (2) JAR LLC, which was created on January 18, 2006, was identified as an active business entity; (3) Sylvan was listed as the general partner of JAR LP which was identified as having been merged; and (4) Sylvan's address was the same as MRT's and Guttman was identified as vice president of that corporation. (Doc. No. 267 at 3; see also exhibits attached thereto.) Based on these assertions, the Court granted Ingram's motion on March 30, 2007, making JAR LLC and Sylvan jointly and severally liable along with JAR LP and MRT for the attorneys' fees, expenses and costs awarded to Ingram ("the March 30 Order.") (See Doc. No. 269.)

On March 30, 2007, Frederick B. Goldsmith ("Goldsmith") of the lawfirm Goldsmith & Ogrodowski, LLC, filed a notice of appearance on behalf of MRT and JAR LP. (Doc. No. 271.)[2] On April 11, 2007, he filed a motion for leave to file motions pursuant to Federal Rules of Civil Procedure 54(b), 59(e), 60(a), 60(b)(6), 62(b) and 62(d), seeking to alter or amend the judgment against JAR LP and MRT in the Order of Court issued with the February 28 Opinion and/or to stay

---

[1] See www.corporations.state.pa.us. (last visited by the Court on May 14, 2007.)

[2] Goldsmith having entered his appearance, the Lawrences' motion to withdraw was granted on April 4, 2007. (Doc. No. 275.)

execution of the judgment pending appeal.[3] (Doc. No. 280-1, "the JAR LP/MRT Motion.") On April 13, 2007, Goldsmith filed notices of appearance on behalf of JAR LLC and Sylvan (Doc. Nos. 282 and 283), and immediately thereafter filed the Motion, seeking leave to file motions pursuant to Federal Rules of Civil Procedure 54(b), 59(e), 60(a), 60(b)(6), 62(b), and 60(b)(4). The arguments in support of the first five motions are essentially the same as those proffered in support of the JAR LP/MRT Motion; the basis for the proposed motion under Fed.R.Civ.P. 60(b)(4) is that by including them in the March 30 Order, JAR LLC and Sylvan were denied their constitutional due process rights.

When JAR LLC/Sylvan filed the Motion on April 13, 2007, Ingram filed a response without seeking leave of Court, and JAR LLC and Sylvan were directed for file a reply thereto. We turn first to consideration of the constitutional issue, reasoning that if the argument raised by JAR LLC and Sylvan is correct, the order of judgment against them should be rescinded and the Court need not address the other motions.

## II.    Proposed Motion Pursuant to Fed.R.Civ.P. 60(b)(4) and Due Process Arguments

Rule 60(b)(4) provides that "[u]pon motion and upon such terms as are just, the court may relieve a party. . .from a final judgment,[4] order or proceeding [if] . . . (4) the judgment is void. . . ." The United States Court of Appeals for the Third Circuit has defined a void judgment as "one which, from its inception, was a complete nullity and without legal effect." Raymark Industries, Inc.

---

[3] On March 30, 2007, Goldsmith had filed a notice of appeal to the United States Court of Appeals for the Third Circuit (Doc. No. 272), seeking review of the February 28 Opinion and the Order of Court issued simultaneously therewith (Doc. No. 255.) On April 23, 2007, the notice of appeal was amended to include the March 30 Order, the memorandum opinion and order denying JAR LP/MRT's motion for reconsideration, the memorandum opinion and order granting attorneys' fees. (Doc. No. 294; *see also* Doc. Nos. 262-265, 269). On April 30, 2007, the notice of appeal was amended yet again to include JAR LLC and Sylvan as parties. (Doc. No. 298.)

[4] Although JAR LLC and Sylvan argue elsewhere that the orders of February 27 and March 30 should not be considered "final," apparently they abandon this argument here. As the Third Circuit has made clear, Rule 60(b) applies only to final judgments or orders. *See* Torres v. Chater, 125 F.3d 166, 168 (3d Cir. 1997).

3

v. Lai, 973 F.2d 1125, 1132 (3d Cir. 1992) (internal quotation omitted). On the other hand, a judgment is not void and therefore not subject to consideration under Rule 60(b)(4) simply because it is erroneous. Marshall v. Board of Educ., 575 F.2d 417, 422 (3d Cir. 1978). A party may be granted relief under the Rule if the court which rendered the judgment "lacked jurisdiction of the subject matter or the parties or entered a decree which is not within the powers granted to it by the law." Id. (quotation omitted). One of the grounds subsumed within the third category is a court's final judgment which is inconsistent with due process of law. See Constr. Drilling, Inc. v. Chusid, No. 03-3786, 2005 U.S. App. LEXIS 8273, *14 (3d Cir. May 11, 2005).

JAR LLC and Sylvan argue that the March 28 Order does not comport with due process as guaranteed by the Constitution of the United States. (Brief in Support of Motion of [JAR LLC/Sylvan] to Enter Judgment, or Alternatively, to Alter or Amend Judgment, or Alternatively for Relief from Judgment, Doc. No. 284-4, "JAR LLC/Sylvan Brief," at 2.) They contend that the Supreme Court has "expressly disapproved of the procedural mechanism Ingram employed in this case" to have judgment entered against them. (Id. at 4, citing Nelson v. Adams USA, Inc., 529 U.S. 460 (2000).) Specifically, they argue that Ingram never filed a motion to amend its pleadings in order to add them as new parties, never filed or served an amended pleading, and did not comply with Rules 12 or 15 of the Federal Rules of Civil Procedure. The Court erred by granting Ingram's motion without permitting JAR LP, MRT, JAR LLC, or Sylvan (collectively, "the JAR Parties") a meaningful opportunity to respond, a violation not only of their constitutional rights but of the Court's own practices and procedures. (JAR LLC/Sylvan Brief at 5-6.)

In opposition to these arguments, Ingram asserts that JAR LLC and Sylvan are "attempting to play somewhat loose with the Court in an attempt to avoid the judgment entered against them and their related entities JAR/MRT," in that they "fail to account for the fact that it was their very own conduct in failing to notify the Court and Ingram of the change in status that led to this result." JAR LLC and Sylvan would have been accorded full due process had they properly notified the

4

Court and the other parties at the time the changes in status occurred in January 2006. (Response of Ingram Barge Company to [the Motion], Doc. No. 295, "Ingram Resp.,"at 2-3.) Furthermore, the situation herein is not analogous to Nelson as JAR LLC/Sylvan claim, but rather to Fromson v. Citiplate, Inc., 886 F.2d 1300 (Fed. Cir. 1989), which the Supreme Court specifically distinguished from Nelson. (Ingram Resp. at 3-5.)

Nelson and Fromson are remarkably parallel patent infringement cases with diametrically opposed outcomes, both arising from the Federal Circuit. In Fromson, the plaintiff moved shortly before trial to add the Cusumano brothers, owners of defendant Citiplate, as defendants in their individual capacities because, based on rumors of its financial difficulties, he suspected Citiplate would be unable to pay any judgment entered against it. The corporation assured the court that it was solvent and, consequently, the motion to add the individual owners was denied. Fromson, 886 F.2d at 1301. Two weeks after the court entered judgment against Citiplate for approximately $4.5 million, as Fromson had suspected, the corporation declared bankruptcy. The court then allowed Fromson to amend his original complaint to add the Cusumanos as defendants pursuant to Fed.R.Civ.P. 15(c), allowed the amendment to relate back to the original date of filing, and three days later entered judgment against them as well. Id. at 1302.

On appeal, the Cusumanos argued in part that they had been denied a trial by jury and, consequently, their due process rights had been violated. The appeals court agreed with the district court that Citiplate and the Cusumanos had a "virtually complete" identity of interests and that the owners "should have known all along that joinder was a possibility." Id. at 1304. Moreover, by falsely assuring Fromson and the court that Citiplate was solvent, the Cusumanos themselves created the "mistake" respecting the identity of the proper party rightfully to be sued and capable of responding to the judgment; thus, they could not rationally argue that Fromson had erred by failing to name them previously or by choosing to sue only the corporation. In short, the court found that under the circumstances, allowing Fromson to pursue the owners individually after

5

judgment was entered against the corporation was "a bed of their own making." Id. at 1304.

In Nelson, Ohio Cellular Products Corporation ("OCP") sued Adams USA, Inc., for patent infringement. When the district court dismissed the plaintiff's claims and ordered it to pay Adams's costs and attorneys fees as allowed under patent law, it also found that OCP's president and sole shareholder, Nelson, had deliberately withheld information from the U.S. Patent Office, an additional claim that was attributable to OCP. Adams believed OCP would not be able to satisfy the judgment and moved to amend its complaint under Fed.R.Civ.P. 15 to add Nelson as a defendant and simultaneously moved for the court to amend its judgment under Rule 59(e) to make Nelson immediately liable. The Federal Circuit affirmed the district court's decision to grant both motions, noting that although it was "uncommon" to add a party after judgment was entered, Nelson's due process rights had not been violated because he was unable to demonstrate that he would have taken any different defensive steps had he been a party from the outset. Nelson, 529 U.S. at 462-466.

On appeal, the Supreme Court reversed, holding that Nelson was never afforded a proper opportunity to respond to the claim in that judgment was entered against him immediately upon his addition to the litigation through the amended complaint, nor did he have an opportunity to state his defenses against the judgment entered against him in his personal capacity. Nelson, id. at 466-467. Most pertinent to the matters at hand, Justice Ginsburg, writing for a unanimous Court, distinguished Fromson (on which the Federal Circuit had relied) on a number of "crucially different" facts. First, Fromson had moved to add the Cusumanos as parties before trial because he suspected that the corporation might not be able to pay. Second, the district court had denied that motion in reliance on the false assurance that Citiplate was solvent. Third, this prior motion informed the Cusumano brothers of Fromson's intent to sue them individually and by "having acted deliberately to derail such a suit," they could "hardly assert that another's mistake or choice of whom to sue had compromised their ability to defend." Conversely, Adams never sought to sue

6

Nelson individually until *after* judgment was entered against the corporation, nor was there any indication that Adams sought relief solely against the corporation because of false assurances regarding its solvency. Nelson, 529 U.S. at 467-468.

At first glance, it appears the JAR LLC/Sylvan situation is more like Nelson than like Fromson in that JAR LLC and Sylvan were added as debtors jointly and severally liable with JAR LP and MRT only after judgment was entered. However, we cannot force the facts of this case into either the Nelson or Fromson paradigm for a number of reasons. First, it is undisputed that by mid-January 2006, MRT had been sold to CONSOL Energy Sales Company ("CESC") where it continued to operate as a wholly owned subsidiary; JAR LLC had been created and JAR LP merged therewith; and Guttman, who had been vice president of Sylvan Investments, the general partner of JAR LP, as well as president of MRT before the sale, continued to act as chief executive officer of MRT after it was sold to CESC.[5] Moreover, in documents submitted by the Lawrences on behalf of JAR LP/MRT in opposing Ingram's petition for fees and costs, the Court learned for the first time that Guttman had told the Lawrences immediately before the evidentiary hearings on July 17, 2006, that he wanted nothing more to do with this matter and would not attend or participate in the hearings. (*See* Doc. No. 261-2, letter dated March 13, 2007, at 1.) The Lawrences stated in their affidavits that this discussion with Guttman was their last interaction with their erstwhile clients until they attempted to contact MRT and XL Insurance after the Court's decision regarding the Special Master's Report and Recommendations was issued on February 28, 2007. (Id.; *see also* six letters at Doc. No. 261-2.) None of the pleadings filed by Goldsmith

---

[5] Despite Guttman's statement to the Lawrences in March 2007 that he no longer had any affiliation with MRT, the court bases this conclusion on (1) the information on the Pennsylvania Department of State website which shows that as of March 29, 2007, MRT was an active corporation with Guttman as its chief executive officer and that he was vice president of Sylvan, also an active corporation; (2) the disclosure filed by Goldsmith on behalf of MRT, indicating that CESC is the corporate parent of MRT (Doc. No. 287); and (3) a letter dated February 16, 2006, from CESC identifying JAR LLC and MRT as its wholly owned subsidiaries (Doc. No. 297-6 at 1.)

on behalf of the JAR Parties contradict these statements. Yet as late as July 2006, Guttman apparently thought it unnecessary or unimportant to advise the Lawrences – much less the Court and opposing parties – that MRT had been sold and JAR LP dissolved.

Second, in connection with resolving the objections filed by the parties to the Report and Recommendations of the Special Master, this Court carefully reviewed every page of the transcript of the evidentiary hearings and observed two things: first, the Lawrences zealously and professionally defended JAR LP and MRT against the claims of Ingram and Tri-River at those hearings, despite the July 2006 conversation with Guttman, and second, there is not the slightest hint in the transcript that the Lawrences, the Special Master, or the opposing parties were aware that JAR LP and MRT no longer existed in the form in which those entities first filed suit for limitation of liability or filed as claimants in the limitation of liability suits filed by Ingram and Tri-River. The JAR Parties were apparently quite willing to allow the Lawrences to act on their behalf as long as it suited their purpose, admitting to this "deception by omission" after judgment was entered against JAR LP and MRT and after the Lawrences advised the Court of their communications with Guttman and XL Insurance after the March 27, 2007 hearing.

Third, the JAR Parties fail to offer even a minimal reason to explain why none of them informed their own counsel – if no one else – of the changes in the business structures of JAR LP and MRT in January 2006. Instead, JAR LLC and Sylvan argue that Ingram had to have been aware of these changes based on newspaper reports of the sale of JAR LLC and MRT by the Guttman Group to CESC. (Reply Brief of [JAR LLC and Sylvan], Doc. No. 297-2, "Reply Brief," at 2-4.) Their attempt to shift the burden to Ingram contradicts Local Rule 7.1.1 which requires a corporation, partnership, or other similar entity appearing as a party in any proceeding to file a Disclosure Statement within seven days of the date of the original filing. "Counsel shall have the continuing obligation to amend the disclosure statement to reflect relevant changes." L.R. 7.1.1A and B. Thus, the burden of informing the Court of their structure and change in parent rested on

8

JAR LP and MRT, not on Ingram, and the belated filing of those amended statements in April 2007, regarding events which occurred in January 2006, hardly suffices to comply with the intent of the rule.

Finally, we find the constitutional due process argument somewhat of a red herring inasmuch as JAR LLC admits that it is liable for the liabilities of its predecessor, JAR LP, including the judgment against it. (Reply Brief at 6-7, *citing* 15 Pa.C.S. §§ 8545(c) and 8549(b).) *See* Fin. Fed. Credit, Inc. v. Callender, CA No. 03-4697, 2003 U.S. Dist. LEXIS 23948, * 8, n.3 (E.D. Pa. Dec. 2, 2003) ("Statements by parties in their briefs are treated as binding judicial admissions.") Furthermore, Federal Rule of Civil Procedure 25(c) provides:

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

Fed. R. Civ. P. 25(c). Substitution of Parties. Transfer of Interest.

"A 'transfer of interest' in a corporate context occurs when one corporation becomes the successor by merger or other acquisition of the interest the original corporate party had in the lawsuit." Luxliner P.L. Export Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 71 (3d Cir. 1993) (citations omitted). "When a defendant corporation has merged with another corporation, . . . the case may be continued against the original defendant and the judgment will be binding on the successor even if the successor is not named in the lawsuit." Id. Such a substitution has been upheld "even after litigation has ended as long as the transfer of interest occurred during the pendency of the case." Id. (citations omitted). "The most significant feature of Rule 25 (c) is that it does not require that anything be done after an interest has been transferred. . . . An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation." Educ. Credit Mgmt. Corp. v. Bernal, 207 F.3d 595, 598 (9th Cir. 2000), *quoting* 7C Charles Alan Wright *et al.* Federal Practice Procedure § 1958 (2d ed. 1986). Thus, we conclude that even though JAR LP has been merged into JAR LLC and MRT has been acquired

9

by CESC, the constitutional rights of JAR LLC have not been violated because the liability of JAR LP has been transferred to it and MRT still exists, albeit with a new corporate parent. Similarly, as a general partner of a Pennsylvania limited partnership, Sylvan remains liable for the debts and obligations of JAR LP. *See* TPS Technologies, Inc. v. Rodin Enterprises, Inc., 816 F. Supp. 345, 350 (E.D. Pa. 1993) and 15 Pa.C.S. § 8533(b).

Because the JAR Parties, deliberately or negligently, obfuscated the facts surrounding their business structures, we conclude this case is not similar to Nelson where the plaintiff knew of his existence and chose not to sue him in his individual capacity. *See* Nelson, 529 U.S. at 467, n.1. We cannot fault Ingram for failing to seek to amend its claim in JAR LP/MRT's suit for limitation of liability to add the new entities prior to the time the Lawrences filed their affidavits on March 29, 2007. Unlike Nelson, it cannot be said that Ingram made a conscious strategic choice to not amend its claim or, conversely, negligently failed to do so.[6] While there may not have been a deliberately false representation to the Court by JAR LP and/or MRT as there was in Fromson, their 15-month silence regarding their change in status is sufficiently analogous that this Court – like the court in Fromson – concludes that JAR LP/MRT created the "mistake" respecting the proper parties to be sued and capable of responding to damages. Just as the Cusumano brothers could have had their constitutional due process right to the jury trial they demanded had they not made false representations to the court, JAR LLC and Sylvan's due process rights to fully participate in the

---

[6] Nor is the Court persuaded by JAR LLC and Sylvan's reliance on Flynn v. Best Buy Auto Sales, CA No. 99-5960, 2003 U.S. Dist. LEXIS (E.D. Pa. Oct. 29, 2003). In that case, the court concluded that adding three individual officers of the defendant after a default judgment was entered against Best Buy Auto Sales would be "constitutionally suspect" because they had been deliberately left out of the original action when the plaintiff sued the entity he believed had defrauded him. Id. at *10-*12. In fact, Flynn supports Ingram's position because the court further concluded that it was the plaintiff's own inexcusable neglect for failing to sue the proper corporate entity because identifying information was readily available when suit was filed and the defendant was not responsible for the plaintiff having sued the wrong party. Here, Ingram originally filed as a claimant in the suit brought by JAR LP and MRT and, as discussed above, it was the latter's failure to advise the Court and the other parties involved in the consolidated cases of the change in their business structures which led to the addition of JAR LLC and Sylvan only after the relevant facts were discovered.

proceedings before the Special Master, raise objections to his findings, and oppose Ingram's indemnification claim and fee petition would have been recognized if they had informed the Court of their existence. But they did not, leading the Court to conclude that they had no interest in protecting those rights until judgment was entered against them. As the Fromson court stated, "It comes with poor grace when the Cusumanos object . . . that the law should not, as it often does in similar contexts, require them to continue lying in a bed of their own making." Fromson, 886 F.2d at 1304.

We find the situation herein quite similar to that in Lock Realty Corp. IX v. U.S. Health, L.P., CA No. 05-715, 2006 U.S. Dist. LEXIS 73498 (N.D. Ind. Sept. 25, 2006). Like JAR LLC and Sylvan, AmeriCare Living Centers III, LLC ("AmeriCare"), argued that its constitutional rights had been violated when, after judgment was entered against U.S. Health for breach of a lease agreement with Lock, the judgment was amended to include AmeriCare as a debtor. (id. at *1-2.) Lock argued that when a check from "AmeriCare Living Centers" bounced, it learned for the first time that during the course of litigation, U.S. Health had assigned its interest in the lease to AmeriCare, a violation of the agreement. The court agreed that there was sufficient evidence of misrepresentation by failure to disclose which had prevented Lock from fully and fairly presenting its claim and distinguished Nelson, on which AmeriCare relied, by pointing out that AmeriCare and U.S. Health were essentially a single business enterprise. Id. at *4-*8. The court concluded that the due process concern discussed in Nelson – "an adequate opportunity to defend against the imposition of liability" – was not implicated since AmeriCare was "more than a prospective party on notice, it was a party to the litigation per its common identity with the named defendants." Id. at *9. Similarly, JAR LLC and Sylvan have failed to explain why they do not have a common identity with JAR LP and how MRT today is significantly distinguishable from the MRT existing in February 2003 when it filed its initial suit for limitation of liability.

"The fundamental requisite of due process of law is the opportunity to be heard." Mullane

11

v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Had JAR LLC or MRT come forward in January 2006 when their sale to CESC occurred, there would have been ample opportunity for them to have been heard prior to the Court's entry of final judgment in this matter. The fact that those parties were added after the judgment was entered against JAR LP and MRT without the opportunity to defend against Ingram's claims during the interminable duration of this litigation is, we conclude, "a bed of their own making." The JAR LLC/Sylvan Motion for leave to file a motion pursuant to Rule 60(b)(4) is therefore denied.

## III.   Proposed Motions Pursuant to Fed.R.Civ.P. 54(b), 59(e), 60(a), 60(b)(6) and 62(b)

The Court has carefully compared the arguments raised in the briefs filed in support of the Motion with those in support of the JAR LP/MRT Motion and finds them virtually identical. The Court denied the JAR LP/MRT Motion in its entirety for the reasons explained in its Memorandum Opinion issued on May 9, 2007 (see Doc. No. 303), and finds no reason to reiterate its reasoning here, with one exception.

JAR LLC/Sylvan argue that JAR LP should not have been held liable for the Ryan indemnity claim inasmuch as JAR LP "had demise or bareboat chartered the M/V Rose G. to MRT, which absolves [JAR LP] from personal liability for the actions of MRT, and [JAR LP] had not contracted with Ingram for the performance of any services, which eliminates any claim for attorney's fees, expenses and costs of litigation under Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124 (1956)." Pursuant to Rule 59(e), they seek to amend the judgment to eliminate any liability on the part of JAR LP for indemnifying Ingram, and, by extension, any liability of JAR LLC and Sylvan due to their relationship with JAR LP. (JAR LLC/Sylvan Brief at 1-2, 7-9.)

The Court finds this argument both untimely and improper. At all times during this litigation, including the numerous occasions on which the parties and the Court analyzed the Ryan indemnity claim, JAR LP was represented by counsel who advocated zealously on its behalf. This argument appears never to have been raised in any previous pleadings filed on behalf of JAR LP (including

the period prior to September 9, 2005, when Goldsmith was acting as its counsel) and the Court

concludes that it has been waived at this point. A motion for reconsideration may not be used to

present new legal theories or arguments which could have been made in support of a prior motion.

Federico v. Charterers Mut. Assur. Ass'n, 158 F. Supp.2d 565, 578 (E.D. Pa. 2001) (internal

quotation omitted). More importantly, this argument was not raised by JAR LP itself in its brief in

support of the motion for reconsideration of Order of Court issued on February 28, 2007, when

judgment was entered against it. (See Doc. No. 256.) JAR LLC/Sylvan did not file the brief in

which this argument is raised until April 13, 2007, seeking reconsideration of the March 30 Order

making them jointly and severally liable with JAR LP and MRT. Thus, the proposed Rule 59(e)

motion by JAR LLC and Sylvan is untimely, having been filed more than ten days after judgment

was entered against JAR LP.[7]  The Motion is therefore denied insofar as it seeks to file a motion

pursuant to Rule 59(e) regarding the judgment entered against JAR LP.

The Motion by JAR LLC and Sylvan now pending at Docket No. 284 is denied in its entirety.

An appropriate Order follows.

/s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

Dated: May **15**, 2007

cc:    Counsel of Record

Special Master Mark D. Shepard, Esq.
Babst, Calland, Clements & Zomnir
Two Gateway Center
8th Floor
Pittsburgh, PA 15222
Email: mshepard@bccz.com

---

[7]  This reasoning assumes, of course, that JAR LLC and JAR LP concede they have an identity of interest because if they do not, JAR LLC and Sylvan have completely failed to explain how they can advance any argument on behalf of another, completely distinct, entity.

13